



FILED
LODGED
RECEIVED

**MAIL**

JUL 22 2009

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

# C09  1039 TSZ-MAT

ANTHONY EUGENE LEWIS
(Name Of Plaintiff)
VS.

KING COUNTY, A MUNICIPAL CORPORATION
CITY OF SEATTLE, A MUNICIPAL CORPORATION
SOCIETY COUNSEL REPRESENTING ACCUSED PERSONS, A PRIVATE LAW FIRM

GABRIELLE RENEE DICKERMAN CHARLETON, A PRIVATE ATTORNEY
GEORGE SJURSEN, A PRIVATE ATTORNEY
MICHEAL TIETJEN, A SEATTLE POLICE OFFICER
NORTWEST DEFENDERS ASSOCIATION, A PRIVATE LAW FIRM
JAMES LEE, A SEATTLE POLICE OFFICER
KEVIN W. McConnell, A PRIVATE ATTORNEY
KERRY ZIEGER, A SEATTLE POLICE OFFICER

MARK HAZARD, A SEATTLE POLICE SERGEANT
DOUGLAS NORTH, A KING COUNTY SUPERIOR COURT JUDGE
VERONICA FREITAS, A PRIVATE ATTORNEY
MICHEAL DANKO, A PRIVATE ATTORNEY

SPECIAL PLEADINGS
CIVIL RIGHTS COMPLAINT BY
A PRISONER UNDER 42 U.S.C
§ 1981, 1982, 1983, 1985(3)
1986, 1987 AND 1988

---

I. Previous Lawsuit:
   A. Have you brought any other lawsuits in any federal court in the United states while a prisoner. ☑ Yes  ☐ NO

   B. If your answer to A is yes, how many? : 3 Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

      1. Parties to this previous lawsuit:

         Plaintiff: Anthony Eugene Lewis

         Defendants; City of Seattle et al

      2. Court (give names of District) Western District Court At Seattle

      3. Docket Number: C07-1517

1

4. Name of Judge to whom case was assigned: Marsha J. Pechman / Brian A. Tsuchida

5. Disposition: Still Pending

6. Approximate date of filing lawsuit: September of 2007

7. Approximate date of disposition: Still Pending

II. Place of Present Confinement: Washington State Penitentiary

   A. Is there a prisoner grievance procedure available at this institution? ☒ Yes ☐ No

   B. Have you filed any grievances concerning the facts relating to this complaint? ☒ Yes ☐ No

   C. Is the grievance process completed?

   D. Have you sought other informal or formal relief from the proper administrative officials regarding that facts alleged in this complaint? ☐ Yes ☒ No

   (ADDITIONAL LAWSUIT)
   Parties to this previous lawsuit
   Plaintiff: Anthony Eugene Lewis
   Defendants: King County
   Court (give names of District): Western District Court at Seattle
   Docket Number: C08-1201-JCC-MAT
   NAME OF JUDGE to whom case was assigned: John C. Coughenour / Mary A. Theiler
   Disposition: Still Pending
   Approximate date of filing lawsuit: August of 2008
   Approximate date of disposition: Still pending

III. Placement of Present Confinement: Washington State Penitentiary
   E. Is there a prisoner grievance procedure available at this institution? ☒ Yes ☐ No
   F. Have you filed any grievance Concerning the facts relating to this complaint? ☒ Yes ☐ No
   G. Is the grievance process completed? ☒ Yes ☐ No
   H. Have you sought other informal or formal relief from the proper administrative officials regarding the facts alleged in this complaint? ☐ Yes ☒ No

IV. (ADDITIONAL LAW SUIT):
   Parties to this previous lawsuit:
   Plaintiff: Anthony Eugene Lewis
   Defendants: State of Washington Department of Corrections
   Court (give names of District): Eastern District Court at Spokane
   Docket Number: CV-09-5047-EFS
   NAME OF JUDGE to whom case was assign: Plaintiff Knows only the initials
   Disposition: Still Pending
   Approximate date of filing lawsuit: June 11, 2009

V. Parties to this Complaint
   A. Name of Plaintiff: Anthony Eugene Lewis, Inmate No: 986577
      Address: 1313 N. 13TH Ave, WAlla, WAlla, WA, 99362

      (In Item B below, place the full name of the defendant, his/her place of employment. Use Item C for the names, positions and places of employement of any additional defendant's. Attach additional sheets if necessary.)

2

B. Defendant: KING COUNTY       Official Position: Municipal Corporation

Place of employment: State of Washington

C. Additional defendants (NOTE: These Defendants must be listed in the caption of the

Complaint.): Gabrielle Renee Dickerman Charlton, Micheal Tietjen, James Lee
Kerry Zieger, george Sjusen., Veronica Freitas, Micheal Dunko
Society Counsel Representing Accused Persons (SCRAP), Northwest
Defenders Association, Kevin W. McConell, Douglas Notty, City of
Seattle, Mark Hazard

IV.   Statement of Claim:

(State here as briefly as possible the facts of your case. Describe how each defendant is
involved, including dates, places, and other persons involved. Do not give any legal
arguments or cite any cases or statutes. If you allege a number of related claims, number
and set forth each claim in a separate paragraph. Attach additional sheets if necessary.)

(JURISDICTION)
1. This action is brought for violation First, Fourth,
Fifth, Sixth, Eigth, Ninth, TENTH, ELEVENTH, THIRTHIENTH,
FOURTHTEENTH and FIFTHTEENTH Amendments to the United
States; under 42 U.S.C. §§ 1981, 1982, 1983, 1985(2)(3)
1986, 1987, and 1988; for tortious conduct under the
laws of the State of Washington. 2. This court has
jurisdiction over the subject matter of this action because this action
arises under the color of Washington State law and of the United states
of America. This court has jurisdiction over the parties alleged in conspiracy.
Venue is properly established in this judicial district because the malicious
Prosecution conspiracy and/or abuse of process occurances leading to this action
occured in King County, Washington pursuant to RCW 4.12.020,4.12.025(a)
and 4.24.350.(1), 4.22.070(1) and 4.28.360 and 4.96.020, and 43.101.410.
3. Mr. Lewis filed a claim for damages regarding the
torts alleged in this action. The claim was presented
to the king County Department of Executive Services Risk
Management Division of King County on February 28,2003,
and to the office of the City Clerk of the City of seattle on May 12,2006
and July 18,2006.
                                                    (Rev. 09/06)

as required by R.C.W. 4.96.020.

## PARTIES

4

At all times material herein, plaintiff Anthony E. Lewis was and is a resident of Seattle, King County in the State of Washington.

5.

At all times referred to herein, defendant Gabrielle R. Dickerman was a private attorney employed by King County.

6.

At all times referred to herein, defendant Veronica Frietas was a private attorney employed by Society Counsel Representing Accused Persons (SCRAP). SCRAP is a private law firm that provides public defender services to indigent, criminal defendants under screening referral of King County's Office of Public Defense Program Services to indigent criminal defendants.

7.

At all times referred to herein, defendant Micheal Tietjen, was a Seattle Police Officer employed by the City of Seattle.

8.

At all times referred to herein, defendant James Lee was a Seattle Police Officer employed by the City of Seattle.

9.

At all times referred to herein, defendant Kerry Zieger was a Seattle Police Officer emloyed by the city of Seattle.

10.

At all times referered to herein, defendant Mark Hazard was a Seattle Police Sergeant employed by the Seattle Police Department.

11.

At all times referred to herein, defendant Micheal Danko was a private attorney employed by King County

12.

Defendant King County is a municipal corporation located in the State of Washington, existing and duly incorporated and organized under the laws of the State of Washington, providing law enforcement and public services to it's residents and visitors by and through the Revised Codes of Washington. Defendant King County was the employer of defendant Dickerman, King County Prossecutor's office

13

Defendant City of Seattle is a municipal corporation located in King county, Washington, existing and duly incorporated and organized under the laws of the state of Washington, existing, providing law enforcement services to it's residents and visitors by and through it's public. Seattle Police Department

Defendant city of Seattle was the employer of defendants Tietyen, Lee, Zieger and Hazard.

14

Defendant Society counsel Representing Accused Persons (SCRAP) is a private law firm that provides public defender services to indigent, criminal defendants by and through a special relationship contract with King County. Defendant Society Counsel Representing Accused Persons (SCRAP) was the employer of defendant Frietas.

5

## 15.

At all times referred to herein, defendant George Sugursen was a private attorney employed by Northwest Defenders Association.

## 16.

At all times referred to herein, defendant Kevin W. McConnell was a private attorney employed by Northwest Defenders Association.

## 17.

At all times referred to herein, defendant Douglas North was a private attorney and King County Superior Court Judge employed by King County.

## 18.

At all times referred to herein, defendant Northwest Defenders Association was a private law firm that provides public defenders service to indigent criminal defendants under screening referral of King County's Office of Public Defense Program Services to indigent criminal defendants

19.

Plaintiff sues all individual defendants in their private and official capacities.

20.

At all times referred to herein defendants George Sjursen, Northwest Defenders Association, Douglas North, Kevin W. McConnell, King County, City of Seattle, Gabrielle R. Dickerman, Veronica Freitas, Society Counsel Representing Accused Persons, Micheal Danko, Officers Micheal Tietjen, James Lee, Kerry Zieger, and Mark Hazard; acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the State of Washington, king county, City of Seattle and of the United States of America.

21.

## PRELIMINARY STATEMENT

This is a claim brought by Anthony Eugene Lewis, an African American class based citizen and resident of the City of Seattle, and King County, Washington. Files this special pleading against defendants to redress a particular conspiracy off selective and malicious prosecution, abuse of legal process, defamation and double JEOPARDY.

Plaintiff seeks, inter alia, economic and non-economic damages exemplary; special damages, and punitive damages, and attorneys fees and costs.

22.

## STATEMENT OF FACTS

By acts of conspiracy by the named defendants Lewis was particularly racially and selectively and maliciously re-prosecuted on May 11, 2006 through October 3, 2006 and the double jeopardy claus. Following an Unlawful conviction obtained by fraud, perjury or other corrupt means on December 5, 2005 involving a cause of State of Washington V. Anthony Eugene Lewis CauseCt# 05-1-04086-0, in King County. This action arose from a Seattle Police Department conspiracy involving the arresting officers falsly alleging Mr. Lewis was engaged in a drug transaction warranting a lawful Terry stop which discovered Lewis in Violation of the Uniform Controlled Substance Act, as a result of a pretexual racial profiling Terry stop, and unlawful detention, false arrest and imprisonment

attack, assault and battery and conspiracy by the Seattle Police officers Micheal Tietjen, James Lee, Kerry Zieger and Mark Hazard knowingly, voluntarily and intelligently depriving Mr. Lewis the right to receive accurate and truthful documentation of the circumstances surrounding the arresting officers' act of. Unlawful arrest and release of Lonnie McClure, a material witness who at the time of his arrest was under violation of an arrest warrant for the Department of Corrections Supervision on March 10, 2005. **23.** Did conspire to obstruct justice in order to prevent their unlawful actions from becoming Public information on record.

**24.** The arresting officers and sergeant Hazard conspired to release McClure from the West Precinct holding cell # at 0346 in light of his active warrant for his arrest. **25.** In exchange for McClures silence and by threat not to show up for court on behalf of plaintiff as a witness to the officers unlawful racial profiling, bias policing, unlawful stop, arrest and imprisonment, attack, assault and battery and conspiracy.

**26.** Thereafter, primary arresting officer Micheal Tietjen conspired with fellow officers Lee, Zieger and Hazard filed a false Certificate for Determination of probable Cause — Narcotics, alleging plaintiff was observed in what appeared to be a narcotics buy or sell with two known drug users, by merely holding out his outstretched hand, without identifying any transaction or exchanges, **27.** While facially invalid and inadequate to support reasonable suspicion or a finding of probable cause, and contained misstatements of fact or ommissions. Such as the unlawful arrest and release of Mr. McClure with an active warrant for his arrest and that the arresting officers Tietjen and Lee used force during the arrest which was unaware to the magistrate's determination. **28.** And the officer conspired in bad faith before instituting criminal proceedings failed to make a full and fair disclosure in good faith of all material known facts to the King County Prosecuting Attorney office and that based on their mistatements and or ommissions, that the prosecuting attorney's office preferred a criminal charge and caused plaintiff to be unlawfully seized to appear for arraignment on September 15, 2005.

**29.** In order to conspire to deprive plaintiff from documentation obtaining any record of McClure as ever having been a witness in his favor ...... as a culp

as exculpatory evidence to defend against their conspiracy of an unlawful
Terry stop on March 10, 2005.

30. Sergeant Mark Huzard knowingly voluntarily
and intelligently on March 10, 2005 and in conspiracy
to cover up his shift command over the false arrest
assault and battery, racial profiling, bias policing
and false imprisonment of plaintiff and the release
of McClure with an active warrant for his arrest.

31. Filed a supervisors summary report that
conspired to exclude Mr. McClure as having been a material
witness arrested and unlawfully released from the West
Precinct holding cell #3 at 0346 on March 10, 2005,
as apart of the instituting of criminal charges against
plaintiff in order to deprive plaintiff from obtaining any
record of McClure as ever having been a witness. In his favor
as exculpatory evidence, to defend against his officers. Conspiracy of an
unlawful Terry stop.

32. Defendant attorney Veronica Freitas after she
having been assigned to represent plaintiff and learning from Mr. Lewis that he
intended to sue King county and the arresting officers for false arrest
assault and battery and malicious prosecution and false imprisonment do
to plaintiff having been unlawfully racially profiled
while walking to the store to buy a soda pop with his cousin Connie
refused to obtain the West Precinct Log sheet that would show Miranda and
his cousin Connie McClure's arrest on 3/10/05 and to bring this to the prosecutors attention
that the arresting officers failed to document. 33. Ms. Freitas Conspired against plaintiff
with the King County Prosecuting attorney Gabrielle R. Dickerman by failing to make any
further request for discovery investigating the video footage located on the police
van that would reveal the entire incident on March 10, 2005 and contradict the arresting
officers police reports and for her to atleast interview the officers on record prior to
trial about Connie McClure in order to impeach them. 34. In which clearly at the time
would have revealed exculpatory evidence of McClures arrest
and release with plaintiff for the same crime of VUCSA in which there
is no indication of McClure's arrest and release from an active warrant under
D.O.C. supervision documented in the arresting officers police reports when Defendant
Freitas made her notice of appearance. and request for discovery on September 12, 2005.
36. And upon interviewing Mr. Lewis and having been made fully aware of
Mr. Lewis facts of his and Connie Lee McClures. Racial profiling and unlawful
arrest and imprisonment under false arrest. 37. Ms. Freitas refused to file any motions
to have Mr. Lewis case dismissed for selective and malicious prosecution because she
did not want to allow Mr. Lewis the right to file civil action against Ring county and the city of seattle.
38. Thereafter Ms. Freitas Conspired not to Interview Mr.
McClure prior to trial and/or his mother Dorothy M. McClure who plaintiff explained
to Ms. Freitas that she could also testify she witnessed Connie's fear and
crying upon his release from the West Precinct and return at her home at
5 am on March 10, 2005. 39. Ms. Freitas, in light of this exculpatory

evidence rendered deliberate indifference to deprive Lewis of their becoming any record between her and Ms. Dickerman having any disclosure of Mr. Lewis exculpatory evidence revealed to Ms. Dickerman concerning Lonnie Mcclures arrest. 40. And conspired together therein to deprive Lewis from receiving his case dismissed in order to deprive him, from petitioning the government against a redress of grievances alleged in this case. 41. Nor did Ms. Freitas request any use of force reports or interview any of the officers as to Mr. Lewis allegations for purpose of preventing a record from becoming evidence of selective prosecution. 42. Defendant Ms. Freitas, further conspired not to request plaintiff medical records that

he had been taken to harborview medical center for his treatments and his treatment would be on Medical file, of March 10, 2005. 43. Mr. Lewis thus since receiving

his case file has found no document by either Ms. Freitas or between Ms. Dickerman, on file, having made any exchange of discovery request regarding Lonnie Mcclure on file and having further requested interview witness statements request for Mcclure addressed to Ms. Dickerman in return acknowledging receiving received any request by Ms. Freitas to interview the arresting officers. 44. Or Ms. Freitas having the investigator

interview Mr. Mcclure or his mother Dorothy Mcclure from the first intake interview with Mr. Lewis. 45. who at the time was living with his aunt Dorothy Mcclure who was available had Ms. Freitas sincerly wanted to pursue the truth prior to Lewis trial. 46. Nor did Mrs. Freitas attempt to ascertain Mcclure's arrest warrants by searching the District Court Information system database or the database maintained by the Department of Corrections listing persons under supervision. 46. Defendant Ms. Freitas from her September 12, 2005

notice of appearance and request for discovery on Lewis behalf all the way until the date of trial on December 15, 2005 conspired a designed plan by knowingly, voluntarily and intelligently conspiring with private attorney Gabrielle R. Dickerman Charlton in preparing this case for only a stipulated facts and Waiver of jury trial. 47. In order to conspire preventing Lewis from receiving an open public trial and for the purpose of

presenting this case [only to the court] to obtain a private advantage against Lewis based solely on the arresting officers reports, to obtain a private advantage convicting plaintiff and obstructing justice to prevent Lewis's

petitioning the government against a redress of grievances for selective and malicious prosecution, Defendant Dickerman sent an e-mail to Veronica Freitas on 11/6/05 at 5:12 PM, notifying that trial is set for 12/5/05 and to Please let her know if Ms. Freitas had any thoughts on this. 48. At no time did Ms. Freitas on record bring up Lonnie Mcclues arrest or Mr. Lewis assault or request any interviews with the arresting officers. 49. Thereafter, defendant attorney, Gabrielle Renee Dickerman Charlton, after being made known by Ms. Freitas that Mr. Lewis had plans on suing King county and the arresting officers for his false arrest imprisonment, assault and battery defamation and conspiracy. 50. Began acting in conspiracy with Ms. Freitas, and acting as a private attorney in order to obtain a private advantage against Lewis by shielding herself under the color of state law as a King county Prosecuting Attorney in effectuating to procure a conviction as Anthony Eugene Lewis on 12/5/05.

51. Defendant Dickerman further conspire with the arresting officers off record to protect King County and the City of Seattle and the arresting Police officers from being sued for selective prosecution and malicious prosecution and preventing civil liability. 52. After having discovered from Ms Freitas Mr Lewis referenced to the Log sheet that Connie McClure had been arrested and unlawfully released with an active D.P.C. arrest warrant and that their was no documentation mentioning McClures arrest and release and use of force in their report. 53. Ms. Dickerman Charlton in her private capacity conspired with Ms. Freitas to agree to submit Mr. Lewis case to the Court by having Mr. Lewis unknowingly, unvoluntarily and unintelligently Sign away his right to call Mr. McClure and his mother Dorothy McClure. as a witness to testify on plaintiffs behalf and the right to testify himself by signing a stipulation of facts and waiver of jury trial right on 12/5/05.

54. On December 4, 2005, a day before trial Since prior to trial all attempts to get Ms. Freitas to interview Mr. McClure or his mother failed plaintiff had his cousin McClure leave Ms. Freitas a voice mail from his phone detailing his actual presence and explaining their unlawful arrest and the reason of his warrant for his arrest and the officers threat not to Show up for court on Mr. Lews behalf.

55. Thereafter, later that evening Ms. Freitas returned Ms. Lewis call and explained that since McClure Would not be showing up for court she would not be able to use McClures testimony. 56. On December 5, 2005 Mr. Lewis in preparation for his trial had obtained his own medical records of having been treated for his injury's on March 10, 2005 at Harborview Medical Center Ms. Freitas failed to request on her own and after she had been fully made aware by Lewis he had been assaulted and taken to the hospital. 57. Ms. Freitas intentionally failed in her conspiracy with Ms. Dickerman Charlton to deprive Lewis of any record having requested exculpatory evidence that would place Ms. Dickerman on prior actual or constructive notice of Selective prosecution and malicious prosecution against Lewis. 58. That would allow his case to be dismissed with prejudice and Mr. Lewis would be able to sue for civil liability against King County and the City of Seattle.

11.

59. Ms. Freitas, Ms. Dickerman, and the arresting officers conspired preventing Lewis's cause being dismissed under theory of selective and malicious prosecution against the arresting officers arbitrary misconduct because of evidence of the West Precinct Log Sheet clearly showing Lonnie McClure had been arrested and released for the same crime of VUCSA on March 10, 2005.

60. The defendant's conspired instead to present Lewis case to the court based on [suppressing all evidence obtained following an illegal search and seizure] without any mentioning in Ms. Freitas Motion to suppress pursuant to 3.6; that their was an occurance of fraud, pertaining to Lonnie McClure having been a witness arrested and release with an active D.O.C warrant on March 10, 2005 against the arresting officers and misstatements and omissions in their Determination for probable cause to arrest and incident reports. 61. Ms. Freitas, Ms. Dickerman and the arresting officers conspired a routine suppression hearing for purpose of creating a false record away from the true nature of facts the arresting officers had unlawfully racially profiled and bias policed Mr. Lewis and Mr. McClure and unlawfully stopped, detained them; and used excessive force of assault and battery against Mr. Lewis to remove his hands from his pockets after he refused their orders against their racial profiling and pried open his fingers to discover he was in possession of cocain and unlawfully place him under arrest.

62. And during the course of prying open his hands to discover he was in possession of drugs arrested Mr. Lewis and Mr. McClure and in filing their police reports the officers knowingly, voluntarily and intelligently failed to record mentioning Mr. McClure in their report as a witness and suspect arrested and released. 63. In order to conspire depriving Lewis of any record of Lonnie McClure as a witness against the officers fraud that they observed Lewis in what appeared to be narcotics activity authorizing them to make a lawful Terry stop because they were able to

12

Pry open Lewis hands to discover he was in possession of cocain. But falsly claim the cocain was discovered upon removing Lewis hands from his pockets, that rocks of cocain supposedly fell out from the palm of his hands onto the ground which allowed for Lewis arrest for possession of cocain to make up their false statements that a reasonable suspicion existed prior to the contact and that the discovery of cocain unlawfully discovered on Lewis articulated their false detailed reasonable suspicion for a lawful Terry Stop. .64. During Mr. Lewis 3.6. hearing on 12/5/05 the Defendant Dickerman conspired not to directly make a record asking primary arresting officer Micheal Tietjen did he arrest and release. Specifically a person named Lonnie McClure to avoid impeaching his testimony with the West precinct Log Sheet showing Lonnie McClure's arrest and release.

65. MS. Freitas conspired not to directly ask officer Tietjen did he arrest and detain and release Lonnie McClure from the West precinct holding cell #c. .The trial transcripts support evidence that Ms. Freitas only stated "alone or with someone". In which officer Tietjen stated I believe he was alone. 66. There is evidence that Ms. Freitas went on to ask officer Tietjen "And you write a police report, correct?" "And you wrote one about this incident on March 10th?" "And It seems that your recollection of the incident is based upon what you put in your report? Is that correct"?

67. Officer Tietjen stated "That's why we write reports." Ms. Freitas conspired to procur justifying Officer, Tietjens reason for not remembering a lot of details by stating " And I take it you cant remember a lot of details except for what is in your report?"

68. Officer Tietjen responded stating "that's why we write them down while they are fresh in our head." 69. Ms Freitas Knew enough of Mr. Lewis allegation

of Lonnie McClure's arrest that only minored conspiracy to deprive Lewis of effective questioning of officer Tietjen in regards to her line of questions regarding his memory of events and still fail to come outright and not directly ask officer Tietjen on record [did he arrest and release another individual named Lonnie McClure.] And further ask why was he released with and active warrant for his arrest. 70. Ms. Freitas conspired not to make any record of a future liability issue seem relevant in her line of questioning to facially be perceived as a reasonable attorney's trial tactic and strategy.

71. However, Ms Freitas failure to ask officer Tietjen directly about the arrest and release of Lonnie McClure was in deliberate indifference of a conspiracy to deprive Mr. Lewis his right of establishing any record of primary arresting officer Tietjen held accountable for any government misconduct and thus holding King County and the City of Seattle civilly liable for selective prosecution and malicious prosecution. 72. There is evidence that during Ms. Freitas's cross examination she indirectly indicated to officer Tietjen in reference to her knowing about Lonnie McClure's arrest and release by stating to officer Tietjen "Would you put, if you wouldn't mind, the placement of the individuals as you remember them, indicating where you noticed Mr. Lewis, what side he was on, where he was back, front, and if you can mark in with an [" L".]

73. Officer Tietjen patronizingly responded by stating "How about a big "L"? 74. As a fact Ms. Freitas could have chosen any alphabetical letter such a "A" but indirectly reference to officer Tietjen to use the letter "L," as

14

her indirect meaning she knew that the officers had
credibility questions with their police reports having
arrested and released [L]onnie McClure from their West
Precinct holding cell #3 as a material witness and
while under D.O.C. probation violation of an active
warrant for his arrest. 75. But Ms. Freitas in conspiracy
to deprive Lewis of receiving a fair trial or having his case
dismissed and or preventing him from receiving any civil liability
against King County and the City of Seattle Knowingly,
voluntarily and intelligently failed to meaningfully
establish any direct questions of record regarding whether
officer Tietjen had arrested and released Lonnie McClure and
why in light of an active warrant for his arrest was
[L]onnie McClure released. 76. Defendant Ms. Dickerman
acting as a private attorney in conspiracy with Ms. Freitas
question to officer Tietjens recollection of whether or not
Mr. Lewis was alone. Conspired to falsely create a record
of doubt as to the possibility of Mr. Lewis having been with
another person as being just a theory. 77. When Ms. Dickerman
Conspired to procur officer Tietjen" And defense counsel asked you if the
defendant was alone at that point when you contacted
him?" "And if he would had been alone, is that something
you would have generally put in your report?"
        78. Officer Tietjen stated in conspiracy " Generally
if the person had something to do with it." "If
the [guy] is walking five feet away, and they are
together, I dont think I probably would have
included them in the report. If they are walking
together and if they were obviously together; but

15

from [my report], I dont recall that. I was focused on Mr. Lewis. 79. Mr. Lewis states that defendant Dickerman acting as a private attorney procured this false testimony from Officer Tietjen in support of a conspiracy with Ms. Freitas off record having made Ms. Dickerman aware of Lonnie McClures arrest and release prior to trial.

80. Ms. Dickermans redirect examination was a private conspiracy to mislead the record and procure justifying to deprive Mr. Lewis's from receiving any accurate record in order to establish receiving his case dismissed and/or suing King County or the city of Seattle against a claim of selective prosecution and malicious prosecution.

81. In this case Ms. Dickerman was not acting as a prosecuting attorney with off the record knowledge by Ms. Freitas regarding the arrest and release of Lonnie McClure as a suspect and witness arrested on March 10, 2005 with an active warrant for his arrest while under D.O.C supervision because she was aware of the West Precinct Log Sheet that Mr. McClure was arrested and released under D.O.C. supervision. 82. Defendant Freitas in conspiracy failed to make a record to directly question officer Zieger whether he had arrested and released Lonnie McClure. 83. Ms. Freitas only asked "Was Mr. Lewis with another person? Officer Zieger stated "I don't remember". 84. Ms. Freitas, in conspiracy failed to disclose the West Precinct Log Sheet indicating Lonnie McClure's arrest and release in order to have impeached officer Zieger's response by evidence of Lonnie McClure's arrest and release and D.O.C. violation at the date of the incident on March 10, 2005.

85. Evidence support that private attorney Ms. Dickerman conspired to cover up the record of exposing civil liability against King County and the city of Seattle

and the arresting officers procured justifying officer ziegers
response of I dont remember by stating " Officer zieger
defense counsel asked you if you had seen him with
another person. If he had been with another person
is that the kind of thing you would put in your statement?"

86. Defendant Officer zieger stated "only if that person
did something significant that I observed."

87. Defendant Dickerman acting as a private
attorney procured asking Officer Zieger to respond
accordingly when she stated "And did you include any
of that information to that effect in your report?

88. Defendant zieger stated No.

89. The defendants conspiracy was planned by
Freitus and Ms, Dickerman orchestrated to seem as normal procedure
and not a conspiracy by not openly and directly asking officers Tieffen
and zieger did they arrest Lonnie McClure for purpose of
not placing the officers under liability to have to
respond under Oath on record answering openly to the
arrest and release of Lonnie McClure

90. The West precinct Log sheet shows that officer
Lee was the officer who logged both Anthony Lewis
and Lonnie McClure in to the West Precinct holding cell #1
and Cell #3 at 0312 hours by his last name in
print along with his serial badge # 6612.

91. In conspiracy neither defendants Freitus
nor Ms. Dickerman during trial questioned officer
Lee as to whether or not Mr. Lewis was alone in order
to deprive Mr. Lewis receiving any direct record implying
that officer Lee would testify truthfully or untruthfully

as to the arrest and release of Mr. McClure from the West Precinct on March 10, 2005.

92. Both officers Tietjen and Lee were asked by Ms. Freitas was Mr. Lewis alone and defendant Dickerman procurred ~~Officer~~ Tietjen and ziegers responses. 93. However neither defendant Freitas or Dickerman questioned ~~Officer~~ Lee as to the arrest and release of Lonnie McClure because of the West Precinct Log sheet clearly showing officer Lee's last name and badge #6612 having on 3-10-05 ~~bodged~~ both Anthony Lewis and Lonnie McClure for the crime of VUCSA at 0312 hours in holding cell # 1 and # 3.

94. The defendants conspiracy was in plan not to establish any record by placing officer Lee under oath to tell the truth or perjure himself and later be held accountable. Mr. Lewis testifying on his own behalf testified to facts that were later to be proven correct involving the arrest and release of Lonnie McClure.

95. Mr. Lewis testified that the arresting officers racially profiled him and his cousin Lonnie McClure and that the police were following them and harassing them for no reason other than their African American race.

96. Mr. Lewis stated that Officer Kerry zieger while seated in the passenger side front seat yelled out his open window for ~~both~~ Mr. Lewis and Mr. McClure to remove their hands from their pockets prior to exiting their vehicle. 97. And when Mr. Lewis exercised his First Amendment right to inform the officers that he and his cousin McClure did not have to comply with the

Officers direct orders because they were being racially harassed and the officers did not have probable cause to fuck with them and rudely told the officers to leave him and his cousin the fuck alone and tried to walk away with his hand inside his pockets already previously prior to the officers contact because it was cold on March 10, 2005. 98. Mr. Lewis explained the officers were inraged at Mr. Lewis comment that they did not have probable cause. 99. And exited their van and immediately Kerry Zieger who was unknown at the time detained Lonnie McClure while officers Tietjen and Lee used excessive force by Tietjen punching Lewis in his head and kicking him in the stomach and tackling him down to the ground

100. Mr. Lewis testified while he lay on his back protested the officers unlawful assault and battery to remove his hands from his pockets for no reason and told them to stop. 101 Officer Tietjen placed his hands around Mr. Lewis neck and began to choke him while ordering him to remove his fucken hands out of his fucking pockets. 102. While Mr. Lewis struggled under officer Tietjen's chock hold officer Lee began punching Mr. Lewis in his penis and testicles while ordering him to remove his hands from his pockets.

103. Officer Lee and Tietjen were then able to forcibly remove Lewis hands from his pockets and pry open his hands and discover he was in possession of cocain and place him under arrest.

104. Mr. Lewis stated that that's when his cousin Lonnie McClure spoke out "What the fuck"! We cant

Walk to the store and buy a fucken pop. And that
the officers placed McClure under arrest and transported
him to the West Precinct in a seperate vehicle.

105. Mr. Lewis explained that the arresting
officer had refused to take him immediately to the hospital
while in custody of the police van and told him
to shut the fuck up he was not a jail house lawyer
and the only way he was not going to jail is if he died.

106. Mr. Lewis explained during his trial testimony
that the arresting officers were lieing under oath and
that he was not engaged in any drug transaction as
the officers were falsly claiming. 107. Mr. Lewis testified
that his cousin Lonnie McClure was not at trial because
he had a warrant and explained on record he had on
December 4, 2005, while at Lonnie's home McClure used
Mr Lewis cell phone to leave a detailed voice message
of his and Lewis unlawful arrest on March 10, 2005.

108. And that Mr. Freitas said it's not
admissable. In court or he would be there.

109. Mr. Lewis further testified that the arresting
officers had to take him to the hospital and he testified to
never holding out his hand to any women and explained that
police offers police typically claim when having arrested a black male for drugs
that somebody within a circle has their hand out
as the false reasonable suspicion and that he was now a victim of the same stereotype.

110. Mr. identified his injury's and having
picked up his own medical records from the hospital
because Ms. Freitas had refused to do so on her own and stated to the Court that

She would not admit Ms. Lewis medical records.

111. Defendant Dickerman conspired by fraud to cover up any liability against King county by stating she wasnt aware of the medical records existence until trial.

112. Defendant Dickerman in conspiracy to remove any liability directly involving King County recalled officer Lee and conspired with officer Lee to procur his testimony regarding having taken Mr. Lewis to the hospital for his injury's.

113. Ms. Dickerman asked officer Lee "did anyone punch or kick him in the testicles. Or prior to the struggle in order to get him to open his hand, did anyone hit or kick him in any way"? Officer Lee on both occasions answered by fraud stating NO.

114. At no time did either defendant(s) Freitas or Dickerman upon having received testimony by Lewis having been assaulted and taken to the hospital by proof of his medical records did they knowingly, voluntarily and or intelligently question officer Lee if whether how had Mr. Lewis been arrested with another person because Ms Freitas and Ms. Dickerman in conspiracy already knew the truth but were now passing off any liability from themselves onto the arresting officers.

115. The trial court denied Mr. Lewis motion to suppress. Mr. Lewis never wanted to waive his right to a jury trial and agree to a stipulation of facts trial. 116. However, in the court room Mr. Lewis argued with Ms. Freitas that he wanted a jury trial but was told by both defendant Freitas and Dickerman

prior to the commencement of the 3.6 hearing that a stipulation of facts and ~~Waiver~~ of jury trial was the only way he was going to receive his trial and the Ms. Freitas and Ms. Dickerman had both agreed on the stipulation of facts and waiver of jury trial.

117. Conspiring together to deprive Lewis + right to receive a public jury trial by both conspiring to inform him prior to the commencement of the 3.6 hearing that he was not getting a trial unless he signed a stipulation of facts and Waiver of jury trial. 118. Mr. Lewis argued that he did not even know what Ms. Freitas and Dickerman were referring to but unknowingly, unvoluntarily and unintelligently signed away his right to receive a public jury trial.

119. Mr. Lewis requested that the Court address why the Court believed the officers rather than him.

120. Defendant Douglas, stated that it was certainly possible that Mr. Lewis facts did in fact happen the way he said. But he had to look at things from a probability standpoint of which story seems to make more sense. First of all he had three officers who all testified basically to the same set of facts pertaining to only where they were seated in the Van.

121. Defendant Douglas's ruling was selectively ~~descr~~ discriminatory towards Mr. Lewis as a particular class African American charged with a drug crime by stating that it makes more sense that the police would not lie to prosecute him under the color of law. And even though it's possible that the arresting officers grabbed Mr. Lewis and pulled

him off the street is not nearly likely. But that
the arresting officers seen Mr. Lewis engaged in what
appeared to be drug selling and buying.

122. Mr. Lewis, was racially discriminated against
as an African American classed based citizen
particularly charged and convicted of a violation of
the uniformed controlled substance Act, by king county.

123. Defendant North, in his prejudice belief felt that if Mr. Lewis
as an African American was found in possession of cocain his arrest was lawful and
that the police officers story makes more sense to the court.

124. Than obviously Mr. Lewis is guilty as
charged and after having a chance to consider the
stipulation of facts and waiver of jury trial trial
Ms. Freitas and Ms. Dickerman submitted the court
found it appropriate to find Mr. Lewis guilty of
possession of cocain based on the officers testimony
of facts how they recovered the cocain from Lewis during
the course of an unlawful and unfounded Terry stop.

125. However, On December 6, 2005, unbe knew est to Mr. Lewis
defendant Gabrielle R. Dickerman Charlton and officer Lee
did conspired together to cover up King County's and the
city of Seattle's civil liability because of fear of being
exposed in their conspiracy of fraud. 126. Due to Mr. Lewis having
revealed evidence on record during his testimony involving his
cousin Lonnie McClure having been arrested and released with
a warrant and having been assaulted and produced his
medical records to support his facts. 127. The defendant
Dickerman and officer Lee in the furtherance of object

23

Conspired to have officer Lee, perceive to come forward on his own and Claim as if he had made a mistake testifying under oath when asked did he assault Mr. Lewis. 128. In order to make it seem that no conspiracy took place whereby Mr. Lewis was now found guilty by evidence strongly implying fraud and perjury involved on behalf of King County and the Seattle Police Departments officer Tietjen, Lee and Zieger.

129. Defendant's Dickerman and officer Lee conspired to procure that officer Lee after Mr. Lewis guilty finding. Contacted the defendant Dickerman at 10:50 a.m. and informed her that given yesterday's questioning, reviewed his use of force reports and discovered that he had in fact written a use of force report that detailed the fact he did punch Mr. Lewis repeatedly in his penis and testicles while unlawfully searching and seizing Mr. Lewis. 130. Defendant Dickerman sent this memo to the Court and Defendant Freitas and noted in her report that this was the only discrepancy in officer Lee's testimony that officer Lee noted after his review of his report. 131. Defendant Dickerman in her memo claimed that she was relaying this information to both the Court and defense counsel in an abundance of caution. 132. Because of the legal civil ramification against King County and the City of Seattle. 133. Defendant Dickerman conspired to imply to the Court and Defendant Freitas that if the Court and Ms. Freitas believes that this information necessitates an additional evidentiary hearing to clarify the Court's 3.6 ruling of finding Mr. Lewis guilty based on officer Lee's testimony she would require that it be properly noted. 134. Otherwise in light of officer Lee's perjury she would like to proceed to sentencing Mr. Lewis to prison in order to further

24

conspiring to cover up having conspired to deprive plaintiff from rights, privileges and clearly-established immunities.

135. Mr. Lewis, testimony that the officers had infact racially profiled him and his cousin Lonnie McClure, and that the surrounding facts of his arrest by the arresting officers were infact alie, and that his cousin had been arrested and released and that having had produced his medical records to support he had infact received medical treatment for his injury's. 136. Is evidence more likely true than not after he was found guilty further evidence revealed that both officers Tietjen and Zieger conspired together that Mr. Lewis had not been arrested with another person and officer Lee further testifying that no force was used during Mr. Lewis arrest. 137. Clearly shows that infact the arresting officers did conspire to commit willful and intentional and malicious fraud and perjury by testifying to facts of plaintiffs arrest which were simply not true when they knew during trial that they were testifying under penalty of perjury against plaintiff and that knowledge of any falsifying facts was a crime and abuse of process of selective and malicious prosecution and a conspiracy to deprive Mr. Lewis from receiving a fair trial. 138. The arresting officers knew that their actions of fraud and perjury would cause Mr. Lewis a disadvantage against challenging their police reports and sworn testimony's under oath as police officers of the court. 139. The trial court and Ms. Dickerman after Mr. Lewis mistrial conspired to ignore exculpatory evidence of clear and convincing evidence of a crime of fraud and perjury and

Obstruction of Justice. 140. On or about December
18th, 2005, Mr. Lewis along with his immediate family
being Artez M. Ford and Victoria E. Webster went to
the private firm law offices of Society Counsel Representing
Accused Persons concerning to speak with defendant Freitas's
Supervisor regarding ineffective assistance of counsel.

141. While waiting in the lobby defendant Freitas
approached Mr. Lewis and his relatives and asked what he was
doing at the office. Mr. Lewis requested that he be able
to speak with her supervisory to inform that person that
Ms. Freitas had conspired to deprive Mr. Lewis of his rights
under the 6th and 14th Amendment to due process.

142. Mr. Lewis explained to Ms. Freitas that under the
6th Amendment Mr. Freitas was entitled to interviewing
Mr. Lewis cousin Lonnie McClure as a material witness
especially since McClure is Lewis only witness who was
arrest and released with an active warrant.

143. Mr. Lewis explained to defendant Freitas
that for the purpose of his appeal she should have
interviewed Lonnie. 144. Mr. Lewis uncle Artez M. Ford
spoke up by asking Ms. Freitas "What if Lonnie had
been in the hospital wouldn't she have obtained an
affidavit and since he had a warrant for his arrest why did she not verify through
the court system, to show that the officers had released him to cover up
their conspiracy. 145. Mr. Lewis accused Ms. Freitas of conspiring with the prosecuting
attorney to convict him in order to cover up a seattle police conspiracy.
146. Ms. Freitas became angered and told Mr. Lewis, Mr. Ford and
Ms. Webster to get out of her office. Mr. Lewis chimed in with Ms. Webster by
exclaiming "So, what, the lobby is your office too.
147. Defendant Freitas
became even angrier and stormed passed Mr. Lewis and
Mr. Ford and Ms. Webster into the confines of the law
firm and came back within the time Mr. Lewis

was awaiting to speak to Ms. Freitas's supervisor.

148. Ms. Freitas at that point in time full of emotions informed Lewis that she did her best she could do to represent him preparing his trial.

149. Ms. Lewis asked defendant Freitas why did she refuse to interview his cousin Lonnie and or his aunt Dorothy McClure who is Lonnie McClure's mother he had arrived home on March 10, 2005 at 5 am after having been released by the police and threaten not to show up for court. 150. And why did she not request his medical records on March 10, 2005 or request to the prosecutor to receive the officers use of force reports. 151. Or why did she not notify the prosecutor informing her of Lonnie Lee McClure's name that he had an active warrant for his arrest under D.O.C supervision at the time of his arrest and release. 152. Ms. Freitas told Mr. Lewis it did not matter anymore because the prosecutor had her that morning and explained to her that the officer that testified he did not hit, punch or kick him in the testicles had recanted his statement. 153. And that Mr. Lewis would be receiving a new attorney to address the issue on a hearing scheduled for December 29, 2005. 154. Mr. Lewis asked Ms. Freitas why she took so long to relay this information. 155. While, Ms. Webster explained that the officer recanting his statement was in fact fraud and perjury. 156. And Mr. Ford explained to Ms. Freitas that Mr. Lewis intended on pressing assault charges and filing a civil action against her and her law firm, King County and the city of Seattle and the arresting officers.

157. Ms. Freitas walked back into the confines

27

of the law firm. 158. Mr. Lewis was informed by the reception desk that the supervisor was unavailable to speak with him causing him to leave the premises.

159. On December 29, 2005, the court granted Lewis request for new counsel due to ineffective assistance of counsel and appoints new counsel to motion for a new 3.6 hearing and new trial. 160. On January 11, 2006 new counsel George Sjursen made his notice of appearance and discovery demand pursuant to CrR 4.7

161. On March 10, 2006 the court heard motion by new counsel to withdraw stipulated trial by defendant, Court puts on the record, the prior stipulated trial and facts, Defendants motion to withdraw the stipulated Trial re ineffective assistance of counsel.

162. Prior counsel defendant Freitas put on record, her knowledge of the issue and credibility of the officer to certain facts re new evidence.

163. New counsel George Sjursen addresses the Court, re the transcript of the trial. The Court orders respective counsel will come on April 28, 2006 at 1:00 pm to address new evidence and ineffective assistance of counsel. 164. On March 17, 2007, Mr. Lewis counsel George Sjursen obtained Mr. Lewis' cousin Lonnie Lee McClure's case criminal history in which revealed Mr. McClure was at the time actively in violation of D.O.C. supervision. 165. On March 27, 2006 Mr. Lewis' counsel obtained a declaration from Dorothy M. McClure who is Lonnie Lee McClure's mother providing her statement

28

and account of "on the morning of March 10, 2005 my son, [Lonnie McClure] returned to my home at about 5am.
He was visibly shaken and crying.
I asked him what was wrong and he stated that he was walking with his cousin [Anthony Lewis]. He told me that they were going to buy a soda pop at the store. He told me that the cops had been messing with them and following them. He told me that they made Anthony take his hands out of his pockets and were stopping him for no reason. He told me that they were both handcuffed and taken in custody.
He showed me the visible red marks from where the cuffs had been on his wrist.
The officers had told my son to go downtown again no matter what and threatened.
Since this time my son has not been able to visit me out of fear. 166. On April 6, 2006 Counsel for plaintiff, George Sjursen for purpose of Mr. Lewis motion for 3.6 hearing and new trial had his investigator Kristin Andresen met with defendant Zieger but failed to interview primary arresting officer Micheal Treten and directly ask him if he had arrested another individual during the arrest of Mr. Lewis.
167. Ms. Andresen, stated "I arranged to meet with officer Zieger at 8:30 pm at the West Precinct. He was not available so I waited until 9 pm. I asked him, to describe the struggle with the officers and the suspect. He said the most he remembers is that they had him on the ground and the he handcuffed him. I asked if he knew what kind of techniques

they used to arrest him. He said no. I asked if they used any necessary force. He said of course not.

I asked why it was necessary for him to step in and handcuff the suspect. He said because he was back up officer. I asked if this was standard and he said sure. He said the reason was that he would not cooperate. He said when a suspect resist you just do what you can.

I asked if anyone else was detained at this time. He stated that he was not sure.

He said that he did not know if the other two females were arrested or not. I asked if any other males were arrested. He said that he did not remember. I asked if anyone else was around at the time of the arrest. He said that he only remembers the females with the hockey masks.

168. Officer Zieger conspired to cover up the fact that it was him that was the officer detaining Lonnie McClure as officer Tietjen and Lee were contacting Mr. Lewis.

169. This evidence is supported and was established at trial when officer Tietjen testified "No. Officer Lee and officer Zieger were with me. I am not sure if officer Zieger [was contacting another person], but I know officer Lee was with me when I was contacting Mr. Lewis. 170. Evidence later revealed establishes Lonnie McClure was arrested which makes officer Ziegers trial testimony and his interview statement's conspired by fraud to willfully obstruct justice and use the legal system for a purpose for which it was not designed for improper use.

171. On April 21, 2006 new counsel for Mr. Lewis issued a subpoena to Connie McClure to appear on April 28, 2006 at 1:30 P.M. in which he failed to appear because he had a warrant for his arrest and due in fact that defendants Tietjen Lee, zieger and Huzard threatened him upon his release in exchange for his silence not to testify on behalf of Lewis to their racial profiling and false arrest. 172. On April 24, 2006 new counsel files motions for new 3.6 hearing and motion to withdraw stipulated facts and waiver of jury trial to be argued on April 28, 2006. 173. From December 6, 2005 until April 28, 2006, defendant Dickerman was placed on prior actual or constructive notice that Connie McClure was a material witness who was arrested and released by the arresting officers and she was in possession of the West Precinct Log sheet to Confirm Connie McClure was arrested and released. 140. And upon learning that he did have a warrant for his arrest she conspired to 180 a response to Mr. Lewis motion for new trial and 3.6 hearing that McClure's material witness presence was irrelevant to the fact that the record did not establish what information McClure would have provided, being in fact that he nor Mr. Lewis was involved in any drug transaction as the police officers falsly asserted. 174. In which is false because during trial Mr. Lewis introduced his cousin and himself were both racially profiled followed, harassed stopped and both arrested and taken into Custody. 175. While Lewis testified McClure had an active warrant on 3-10-05 for his arrest the police released him. 176. This information supported that Mr. Lewis and McClure's arrest and imprisonment was unlawful at best to support a Seattle police conspiracy and Defendant Dickerman and Freitas and the arresting officers conspired to cover up to avoid civil liability against King County and City of Seattle

31

to deprive Lewis his right to petition the government against a redress of grievance if he is found guilty and sentenced to prison.

177. Defendant Dickerman acting outside of her scope of jurisdiction conspired by fraud to deprive Lewis his right to immunity from selective and malicious prosecution based on his race as an African American unlawfully found in possession of cocain.

178. And defendant Dickerman did not care for the truth but cared for further covering up conspiring hers, Ms. Freitas and the arresting officer's conspiracy to advance Lewis conviction and deprive him his right to sue King County and the city of seattle

179. Furthermore defendant Dickerman, filed a motion to deny Mr. Lewis to withdraw his stipulated facts and waiver of jury trial when she played a active role indirectly and directly conspiring with defendant Freitas not to go on record with Mr. Lewis that a colloquy be done when there is a waiver of his right to a jury trial.

180. Defendant Dickerman was not acting in her official position when she aggreed to accept Mr. Lewis signed waiver off record to be sure on record before the court that his rights were being protected and not to deprive him to receive a jury trial unknowingly, unvoluntarily and unintellygently. 181. On April 28,2006 defendant Douglas North acting in his private capacity after hearing evidence that officer Lee had committed perjury while testifying under oath and learning that Mr. Lewis cousin had been arrested by the arresting officers, who again perjured themselves under oath claiming that Lewis was arrested alone's and if he had not they would have recorded in their reports having arrested another person, and after receiving evidence during Mr. Lewis testimony that he was arrested with his cousin Lonnie McClure and that McClure had a warrant and that the officers had released him from the precinct, and Mr. Lewis requesting to know from defendant North who he did not believe his testimony over the officers. 182. Defendant North conspired to ignore a crime of fraud and perjury had been committed against Mr. Lewis and was in obstruction of justice inlight of shocking evidence of police misconduct and abuse of legal process in which it was not designed for primarily used by the arresting officers to accomplish a purpose to convict Mr. Lewis based solely on their police reports and perjured testimony under shield and cloak of the prosecuting attorney's office to subject and cause Lewis harm by knowingly, voluntarily and ...

intelligently using the legal process not within the proper scope of the process and not in the regular prosecution of the proceedings by misuse or misapplication of the process with ulterior motive. 183. Defendant North instead conspired with King County Prosecuting Attorney's office and in favor of the City of Seattle by not dismissing Mr. Lewis case against conspiracy of selective and malicious prosecution but granted Mr. Lewis a new trial, and allowing King County to twice try Mr. Lewis again for the same crime. 184. In which King County is liable for it's employees Gabrielle R. Dickerman Charlton acting in her private capacity to ignore a crime against Lewis, and defendant North thus acting in his private capacity deprived Mr. Lewis from receiving the same privileges from being subject for the same offense to be twice placed in double jeopardy to be compelled in any criminal case to be a witness against himself after defendant North found Lewis only guilty for the same offense on 12/5/05. 185. Defendant Dickerman in conspiracy to deprive

Mr. Lewis to receive a new 3.6 hearing and new trial and withdraw his waiver of stipulated facts and waiver of jury trial, responded that the information received by both parties that Connie McClure had been a material witness arrested and released with an active warrant under D.U.I. supervision by the officers and that officer Lee had committed perjury testifying he did not assault Lewis and them admitting he did after Lewis was found guilty did not meet the new trial requirement for newly discovered evidence. 186. Defendant Dickerman in conspiracy with Ms. Freitas and the arresting officers after having personal knowledge of fraud and perjury by the arresting officer was not acting under the scope of King County legal by failing to determine whether the newly discovered evidence of police misconduct was so shocking as to violate Mr. Lewis due process and to re-file the same charge against Mr. Lewis would violate and deprive Mr. Lewis of immunities and privileges from double jeopardy after he had been unduly convicted in light of receiving exculpatory evidence of fraud and perjury and other corrupt means. 187. Defendant Dickerman conspired to mislead the record to deprive Lewis immunity from selective and malicious prosecution by acting outside the scope of justice by ulterior motive to conspire to re-convict Mr. Lewis with knowledge that the arresting officers had testified under sworn oath to tell the truth, and the whole entire truth. 188. And thus conspired to ignore the officers crime of fraud and perjury for the intent purpose of depriving any right to file a civil rights action for selective and malicious

33

prosecution ... 189. In which the outcome of this case more likely than not proved all three officers did arrest and released M'Clure and willfully failed to document his arrest while testifying by fraud during Lewis trial that Lonnie Meclure was never arrested with Lewis. 190. Defendant Dickerman conspired to cover up her involvement of a conspiracy by claiming "If anything, the fact that officer Lee came forward immediately upon supposedly learning of his mistake strengthens, rather than weakens, his credibility.

191. Defendant Dickerman used her official position to conspire to cover up any liability against herself, king county and the city of Seattle and arresting officers by passing ineffective (assistance of) counsel to investigate interviewing the arresting officers on Ms Freitas to claim even if material, this information was certainly available at the time to Ms. Freitas who had every opportunity to interview all of the officers involved in this incident. Ms. Freitas had the information from Mr. Lewis himself that he believed force was used. 192. Defendant Dickerman conspired reverting any liability by claiming that had Freitas questioned officer Lee about these allegations prior to coming to court, he would have reviewed his use of force reports and made the same realization he did following the hearing. There is no indication that any of this was unavailable to Ms. Freitas through reasonable deligence.

193. Defendant Dickerman further conspired to imply liability from herself over to Ms. Freitas by implying Ms. Freitas' failure to have conducted any investigation at all involving Lonnie McClure and the arresting officers use of force, was a trial pychology and tactics, to mislead the record, that there was never any attempt made by Ms. Freitas on record to bring to the attention of the king county Prosecuting Attorney's office that

34

their were concerns about the arresting officers arrest on March 10, 2005.

194. And proclaimed in light of the evidence of Lonnie McClure having been a material witness arrested and released with an active D.O.C. supervision warrant for his arrest by the arresting officers who also used force against Lewis was not deficient performance because the record did not establish what information Lonnie McClure would have provided. 195. Defendant Dickerman in her private opinion conspired examining that the evidence did not prejudice Lewis rights because he suffered no prejudice amounting to having been found guilty by fraud and perjury and tampering with a witness Lonnie McClure and that green with the above evidence, there was nothing in Mr. Lewis testimony prior to Officer Lee admitting to his own perjury which amounts to anymore than trial strategy and tactical decisions on the part of Freitas to deprive Mr. Lewis a material witness to testify that he and Mr. Lewis had been racially profiled.

196. And that he witness the arresting officers use excessive force against Mr. Lewis for telling the officers they were racially harassing them and that they did not have probable cause to order them both to remove their hands from their pockets. 197. And that he and Mr. Lewis were both arrested and taken into custody in separate vehicle's to the West Precinct station where he was released under threat not to show up for court in exchange for his silence.

198. In light of Defendant Dickerman knowing this evidence was apparent against king county conspired to her private opinion that Mr. Lewis did not met his burden with regard to this argument.

35

199. Mr. Lewis in this case states that there are two reasons Mr. Lewis was granted a new trial and 3.6 hearing. First the evidence that Defendant Dickerman conspired with co defendant Freitas and the arresting officers concealed from the court inwhich was not available to it's guilty finding.

200. Furthermore, the defendants conspired to deprive Mr. Lewis justice in this case because the court was not made aware of this information until after it heard all the arresting officers testimony's against Lewis claiming Lonnie McClure was not a material witness and that officer Lee testified no force was used and Mr. Lewis's request to know why he did not believe that the officers were lieing and that he and his cousin really were racially profiled and unlawfully arrested. 201. The record more than supported Lewis facts more likely than not were true that the time his statments were given which after the termination of this case were further revealed by the Seattle Police Department investigation. 202. And that during trial the record established that there was a dispute about physical force that Milan's established when he produced his medical records on the morning of the incident.  Which obviously this evidence goes against the the credibility of office Lee. 203. And the fact of Lonnie McClure's arrest and release by the officers who testified no such person was arrested inwhich later discovered McClure was arrested. 204. Furthermore, It goes beyond simply impeaching the arresting officers, because

36

the evidence implies a conspiracy to deprive Mr. Lewis from receiving a fair trial related to the charging information revealed information of fraud and perjury, especially when this case was terminated on October 3, 2006 and investigated by the office of professional Accountability that revealed three arresting officers had arrested and released Lonnie McClure and failed to document his arrest, go against the arresting officers, defendant Dickerman and Freitas's conspiracy involving the deprivation of Lewis rights in this case entirely.

205. Second Mr. Lewis did not receive effective assistance of counsel because defendant Freitas in conspiracy to deprive Mr. Lewis his right to petition the government against a redress of grievances involving a conspiracy between defendant Dickerman, King County the City of Seattle, Seattle Police Department, the arresting officers and Ms. Freitas in advance to Mr. Lewis trial. 206. Conspired to have Lewis case presented based on the arresting officers police report rather than requesting a dismissal under 8.3. against Selective and malicious prosecution and fraud from misstatements and omissions from their police reports which failed to include the arrest and release of material witness Lonnie McClure.

207. During the motion Mr. Lewis testified and explained in detailed that his attorney had tricked him into signing away his jury trial rights and that she was fully made aware prior to trial that he requested that defendant Freitas interview his cousin Lonnie McClure.

208. And had he fully known better he would have never signed away his right to a jury trial under the

37

the particular circumstances of his case.

209. Defendant Freitas was sworn in and examined by Ms. Dickerman to further protecting their conspiracy to convict Mr. Lewis.   After the Court hears arguments of ineffective assistance of counsel and motion for new 3.6 hearing. 210. The Court granted all Mr. Lewis motions and the trial court recused itself.

211. From April 28, 2006 through May 11, 2006 Defendant Dickerman had 14 days whether to decide to drop charges against Mr. Lewis due to the evidence known to her prior to the April 28, 2006 motion for 3.6 hearing and new trial involving officers Lee and Tietjens use of force implying perjury and fraud against the arresting officers.

212. And having a record of Connie Lee McClure's presence at the scene having been arrested and released with an active warrant for his arrest by the arresting officers was in violation of the Seattle Police Department arrest procedures. 213. Defendant Dickerman acting on her own private motive with knowledge of fraud, perjury and other corrupt motives involving the arresting officers in this particular case. 214. Did Unlawfully conspire to selectively prosecute Mr. Lewis to appear on May 11, 2006 to be formally re-arraigned in King County Superior Court under the same charging information in order to obtain a private advantage to convict him by conspiracy with the arresting officers in disregard to facts of their conspiracy to commit fraud, and perjury to obtain Mr. Lewis conviction on December 5, 2005. 215. Defendant Dickerman no longer acting within

her role as an advocate for the state of Washington, personally acted on her own private motive deliberately cloaked with the authority of the King County Prosecuting Attorney's office under the color of state law in effecting her conspiracy against-selectively and maliciously prosecuting Mr. Lewis in light of her knowledge that the arresting officers police reports and trial testimony's were based on fraud and perjury.

216. Defendant Dickerman re-instituted the same criminal charge against Mr. Lewis with knowledge that facts of the officers arrest were exposed to be contradictive by their own admissions toeing unfounded.

217. Defendant Dickerman asked both officers Tietjen and Zieger if Mr. Lewis had been alone or with another person that they would have recorded McClure's arrest in their police reports. VRP pg 21 line 18-21, pg 22 line 1-6, pg 33 line 16-25, pg line 1, pg 42 line 17-20, 46 pg line 2-13. 218. After Mr. Lewis was found guilty and from the time officer Lee informed her he had committed perjury Defendant Dickerman acting in the scope of her judicial officer prosecuting authority was placed on prior actual or constructive notice.

219. Ms Dickerman had knowledge during Mr. Lewis trial on December 5, 2005 of Lonnie McClures name to have obtained statements from the arresting officers of Mr. Lewis arrest and release and to determine whether or not the officers unlawfully released McClure at the West Precinct was accessible information from

the Seattle Police West Precinct Log Sheet clearly showing Anthony Lewis and Lonnie McClures arrest at 0312 hours for the crime of VUCSA and McClure's release at 0396 hours by an unidentified officer. 220 Ms. Dickerman also had Knowledge if Mr. McClure was under an arrest warrant on March 10, 2005 by ascertaining McClure's name provided on record and through the Seattle Police West Precinct Log Sheet. to prond Ns. Dickerman to have access the data base maintained by the Department of Corrections listing persons under Supervision as a part of her judicialary role as an advocate for the citizens of the state of Washington. 221. To determine whether or not Mr. Lewis rights would be violated by refiling the same criminal charge in light of the arresting officers crimes of fraud and perjury by misuse of process as part of a conspiracy to misuse judicial process by filing an action known to be false and unfounded as was evidence presented during testimony by all three arresting officers arising out of a duty owed to Mr. Lewis as a particular class based person as a defendant entitled to clearly-established constitutional rights.

222. Defendant Dickerman private motives were not acting in the interest of justice when she selectively refiled charges against Mr. Lewis in light of the arresting officers crime of conspiracy of fraud and perjury during trial 223. But Defendant Dickerman did not file charges of fraud and perjury against the arresting officers trial testimony's as evidence of having committed a crime. 224. On June 20, 2006 Defendant Dickerman was present while during an in Person Interview with

Officer Lee with Mr. Lewis investigator Kristin
Andresen. 225 The interview was held at the the
King county prosecuting Attorney's office at 4:30 PM
226. Ms. Andresen asked officer Lee whether
she could tape record. Officer Lee said he would prefer
not to. Ms. Andresen asked officer Lee if he had contacted
another individual that was with Lewis. Officer Lee said that there
was another individual that was with Lewis.
Ms. Andresen asked officer Lee what
that contact was. Officer Lee said that he did not
deal with that individual. Ms. Andresen asked Officer
Lee if another officer had contact with him. officer Lee
said that he does not know. Officer Lee said
that he and officer Tietjen were with Lewis.
Ms. Andresen asked if the other individual was
arrested. Officer Lee said that he was not arrested.
Ms. Andresen asked whether he was
detained. officer Lee said that he was.
Ms. Andresen asked officer Lee whether
the other individual was cuffed. Officer Lee said
that he did not deal with McClure. Officer Lee
said that he did not see whether McClure was
handcuffed. 227. Defendant Dickerman's presence during
that particular interview as a witness was personally provided with
first hand knowledge that in fact a crime of fraud and perjury had been
committed in conspiracy by the arresting officers on more than one occassion to mis-
use the legal process against Mr. Lewis primarily to accomplish a purpose for which
it was not designed for in order to cause Mr. Lewis to be convicted cloaked under King county's
prosecuting authority or law enforcement office. In light of exculpatory
governmental misconduct of fraud and perjury. 228. Defendant Dickerman in
deliberate indifference to the evidence of officer Lee's testimony having
knowingly, voluntarily and intelligently made her aware that another male had not been documented
in their police reports and testifying under oath during Mr. Lewis trial that their

41

motives in presenting this case for apparent prosecution were not made in good faith and withheld material evidence that failed to fully and fairly and accurately disclose the officers unlawful arrest of McClure as either a suspect or a WITNESS presented in good faith to the Prosecuting Attorney's office prior to initiating criminal proceedings against Mr. Lewis. 229. Ms Dickerman did conspire with the arresting officers upon being made fully aware of having this particular knowledge procured using the the exculpatory knowledge with the officers as their own private advantage to use the legal process together under the cloak of her prosecuting Attorney's to accomplish bringing Mr. Lewis to trial in light of the arresting Officers crime of fraud and perjury for the primary purpose of covering up Officers Tietjen, Lee and Ziegers given false, perjured and conspired police reports and trial testimony's that Mr. McClure was not at the scene of Mr. Lewis arrest to then make up and articulate how they asserted Mr. Lewis was engaged in a drug transaction in order to justify a lawful Terry stop upon using excessive force to assault and batter Mr. Lewis for refusing their junkwash orders to remove his and Lonnie McClure's hands from their pockets without probable cause because the arresting officers pretextual stop was racial profiling and harassment based on Mr. Lewis and Lonnie McClure's African American race.

230. Defendant Dickerman acting in her own private ulterior motive with this direct Information in deliberate indifference and acting under the color of state law with the arresting Seattle Police Officers Micheal Tietjen James Lee and Kerry Zieger. 231. Did conspire selective and malicious prosecution with the arresting officers in order to personally procur justifying my her decisive factor. Of intently depriving Mr. Lewis right not to be twice subject for the same offense to be put in double jeopardy of life or limb to be a witness against himself and against having been convicted once already for the same crime based on fraud and perjury by the arresting officers deliberately cloaked under the power and authority of a prosecuting attorney Officer as her and the officers shield in effecting procuring the arresting officers testimony's as her client's to set a meeting of minds to convict Mr. Lewis a second time with their fraud and perjured testimony's.

232. Defendant Dickerman Conspired laying before the arresting officers as to what course they would pursue in

In order to secure resubmitting the officer's testimony's and advised the officers that the best way to which to obtain Mr. Lewis conviction to receive the desired result's to deprive Mr. Lewis of his life, and liberty by claiming their perjury statements were honest mistakes an not intentional and that she would not prosecute them for their fraud and perjury on December 5, 2005. 233. In order to gether to obtain Lewis conviction at his re trial on October 3, 2006

234. As of this date of filing this complaint none of the arresting officers have never been charged with having comitted fraud, perjury or tampering with a material witness Lonnie Lee McClure by the King County Prosecuting Attorney's Office. 235. On May 12, 2006 Mr. Lewis filed a formal complaint with the Seattle Police Department office of Professional Accountability investigation under #OPA-IS 06-0234 alleging racial profile, unlawful search and seizure, fraud and perjury and tampering with a material witness Lonnie Lee McClure's unlawful arrest and release with an active warrant set free from the West Precinct without and mention of his arrest in the arresting officers police reports.

236. Mr. Lewis also filed two separate claims for damages with the City of Seattle on May 12, 2006 and July 18, 2006 under claim #C-76855 and #C-77122 alleging unlawful Search and seizure, excessive use of force, fals arest and imprisonment, fraud and perjury and selective and malicious prosecution.

237. On May 17, 2006 the Court entered an order of findings of fact and conclusions of law and order allowing Mr. Lewis to withdraw his stipulation of facts and

waiver of jury trial and granting a new trial and
recusing judge Douglas North. 238. The Court finding
of facts that Mr. Lewis did not make a knowing, voluntary
and intelligent waiver of his right to a jury trial and
his stipulation to facts and that Mr. Lewis did not
understand the rights he was giving up, and that the
Court failed to conduct a colloquy with Mr. Lewis to
see if Mr. Lewis understood the rights he was giving
up; and that the evidence of officer Lee's contradiction
of his own sworn testimony was not available to Mr. Lewis
prior to the 3.6 hearing and could not have been available
to the defense; and that because judge North had already
heard the testimony of all the witness and made a determination
as to their credibility, judge North could not be impartial
at a new 3.6 hearing or trial. 239. The Court entered
a conclusion of law because Mr. Lewis did not make
a knowingly, voluntarly and intelligently waiver of his
constitutional rights when the Court accepted the "stipulation
of facts and Waiver of Jury Trial" Mr. Lewis should be
allowed to withdraw the stipulation and waiver.

240. The Court further stated that Mr Lewis
should be granted a new trial and 3.6 hearing because
there is newly discovered evidence material to Mrs Lewis
which Mr. Lewis could not have discovered with reasonable
deligence and produced at trial; and that Mr. Lewis
should be granted a new trial and 3.6 hearing because
justice has not been done without the accurate information
from officer Lee, and that judge North shall recuse

himself because he cannot be fair and impartial given that he has already ruled on the defendant's 3-6 motion, made a finding of guilty against the defendant and given his opinion on the record as to the veracity of the witnesses. 241. Defendant North acting in his private capacity failed to dismiss Mr. Lewis case with prejudice inlight of evidence. He knowingly, voluntarily and intelligently accepted Mr. Lewis waiver & his right to a jury trial without a colloquy on record to determine whether Lewis understood his rights he was giving up in order to conspire with King county and the city of Seattle to cover up the facts of this case in evidence that the arresting officers had conspired criminal charges to withhold exculpatory evidence in order to unlawfully convict Lewis in conspiracy with King County Prosecuting Attorney Gabrielle R. Pickerman charlton's misuse of legal process for which it was not designed for selective and malicious prosecution.

242. Mr. Lewis thereafter requested attorney George Sjorsen to withdraw as acting counsel for his refusal to file a motion for dismissal based on the arresting officers fraud and perjury misuse of the legal process and tampering with a witness Lonnie McClure by releasing him from the West precinct in light of an active warrant for his arrest in exchange for McClures silence not to testify on behalf for Lewis, and deliberately failing to mentioning Lonnie McClure in any of their incident reports in order to obtain a private advantage against their conspired testimony's for the purpose to ensure Mr. Lewis conviction on December 5, 2005, and for his failure to interview officer Michael Tietjen concerning the arrest and release of Lonnie McClure when evidence revealed he was arrested and released. 243. On July 16, 2006 Defendant McConnell was assigned to represent Mr. Lewis and made his first appearance in open court on 6/23/06. 244. Thereafter, Mr. McConnell upon learning from Mr. Lewis' intent to sue King county and city of Seattle and the arresting officers refused to request his investigator to re-interview officer Ziegler and provide an interview for officer Tietjen and question them both directly to their trial testimony's that they testified Lewis was alone and no other individual was detained to dismiss his case for selective and malicious prosecution based on evidence of fraud and perjury involving the arresting officers incident reports, trial testimony's and officer Lee's own admittance of his use of force brought to the attention of King County's Prosecuting Attorney's office on December 6, 2005 and his own admission to the presence of Connie McClure having been detained at the scene with Mr. Lewis further being disclosed on June 20, 2006 during a defense interview investigation by Kirsten Andresen while at the king county prosecuting attorney's office with Ms. Dickerman present as a witness. 245. On July 17, 2006 Mr. McConnell tried to have himself removed as attorney of record in which the court denied the motion without prejudice after learning from

45

Mr. Lewis that Defendant McConnell did not want to be the white person to file a motion to dismiss Mr. Lewis' case based on racial, and selective malicious prosecution.

246. On 7-19-06, the court granted Defendant McConnell's motion to withdraw as acting counsel for Mr. Lewis.

247. On 7-24-06 Defendant Micheal Danko made his initial appearance and request for discovery in this case.

248. Mr. Lewis in his first interview with Defendant Danko, informed Danko of the history of his particular case being a conspiracy orchestrated by the arresting officers racial profiling, false Terry stop, excessive use of force used to obtain the cocain from prying open his fingers and the officers arrest and release of his cousin Lonnie Lee McClure who at the time had a arrest warrant.

249. Mr. Lewis explained to Defendant Danko the reasons why his former attorney's were ineffective assistance of counsel and how they tried to get Mr. Lewis to take a plea bargain which would in fact bar his right to petition the government against a redress of grievances to sue King County and the city of Seattle for selective and malicious prosecution.

250. Mr. Lewis requested that Danko file a motion based on the true nature of events of his case being the arresting officers had committed fraud and perjury during Lewis's first trial when officers Tietjen and Zieger conspired to testify before defendants Veronica. Fretta's and King County Prosecuting Attorney Gabrielle R. Dickerman and the trial court Douglas North to mis-use the legal process as a shield in cloaking themselves in effecting primarily to accomplish a purpose to cover

up the officers arbitrary acts of government misconduct
by means to validate Mr. Lewis prior conviction on the
basis of the same false and perjured testimony and
police report's and trial testimony's plaintiff was engaged in
a drug transaction and that Lonnie McClure was not arrested as a suspect
or witness on March 10, 2005, and that the officers had committed the unlawful
crime of conspiracy. 251. Mr. Lewis also requested to submit to a lie
detector test. 252. Mr. Danko refused to provide Mr. Lewis the test nor would he file such a motion
on Lewis behalf that would create a record of accurate
events taken place in his case to avoid any conflict
of interest between his ties with the Court and association
with other attorneys and told Mr. Lewis he would only
file a motion to suppress the evidence based on the facts
the officer Tietjen's Determination for probable cause was
weak in his opinion. 253. Mr. Lewis immediately informed
Defendant Danko that he infact was conspiring to
cover up the conspiracy of Ms. Dickerman, Freitas
and the arresting officers by his conspiring to get
his case dismissed under false basis of a lack of probable cause
to arrest from the officers report he was observed in a drug transaction even though there is
exculpatory evidence of fraud and perjury contradicting
the arresting officers police reports and trial testimony's
he would be conspiring to argue in agreement the
arresting officers false facts of the case to mislead
the record to try and get his case suppressed under a
false theory in light of evidence of fraud and perjury in order
to deprive Lewis of an accurate record to later file his civil action.
        254. Mr. Danko at that point in time told
Mr. Lewis their was nothing Mr. Lewis could do about it

he was the attorney and if Mr. Lewis wanted to bring his theory to the Court's attention then he was welcomed to represent himself at his new 3-6 hearing scheduled on October 3, 2006.

255. On July 18, 2006 Mr. Lewis filed another complaint with the office of the City Clerk of the city of Seattle claiming he was now being maliciously re-prosecuted by the arresting Seattle Police officers after having been convicted and his conviction set aside due to fraud, perjury and tampering with a material witness. 256. On August 14, 2006 Mr. Lewis filed a formal complaint with the Washington State Bar Association against former attorney Kevin McConnell for his ineffective assistance of Counsel depriving Mr. Lewis the right to receive effective assistance of Counsel to represent him filing a motion to have his case dismissed under the proper facts of his case being selective and malicious prosecution.

257. Defendant Danko from the time he was assigned to represent Mr. Lewis failed to have his investigator interview Lonnie McClure nor his mother Dorothy M. McClure. 258. Mr. Lewis requested that defendant Danko obtain the West Precinct log sheet and arrest warrant's for Lonnie Lee McClure as to the West Precinct log sheet that would clearly show Anthony Lewis and both Lonnie McClure's arrest and to obtain the video footage from the Police van driven on March 10, 2005 by the arresting officers that would contradict the arresting officers incident reports.

48

259 Defendant Danko refused stating the video was irrelevant and that he would not work Mr. Lewis case towards his advantage to sue either King County or the City of Seattle and the arresting officers in this case "if" Mr. Lewis case was dismissed.

260. On October 3, 2006 during Mr. Lewis new trial and 3.6 suppression hearing Mr. Lewis requested to retestify as his own witness since Mr. Danko failed to obtain any investigations interviewing his aunt Dorothy M. McClure and failed to subpoena her for trial to testify as to the declaration statement she gave on March 27, 2006 told to her from first hand account from her son, Lonnie Lee McClure after arriving home at her house at 5. a.m on March 10, 2005 after having been unlawfully arrested and released from the Seattle Police Department West Precinct with his cousin Anthony Lewis, plaintiff in this case.

261. Mr. Lewis requested to retestify in order to better establish the facts of the record concerning his and Lonnie Lee McClure's racial profile and unlawful search and seizure and his own assault against the Officer's Tietjen and Zieger's fraud and perjured testimony that Mr. Lewis was alone and had he not been they would have documented Lonnie Lee McClure in their police report's. 262. Mr. Lewis prior to trial informed defendant Danko that he wished to address in his testimony Officer Lee's interview with the defense investigator on 6/20/06 while at the prosecuting attorney's office with the prosecutor Gabrielle R. Dickerman present in which

Officer Lee admitted Lonnie Lee McClure's presence
infront of the prosecuting attorney, a fact she was
informed of and that she failed to terminate Mr. Lewis
case under the basis that she personally received further evidence of
perjured testimony's from officers Trotjen and zieger
during trial and instead of acting on a crime of
fraud and perjury she instead conspired and procured the officers
to present their perjured testimony at Mr. Lewis new
trial for her own private advantage to reconvict
Mr. Lewis a second time in order to deprive him of
his right to sue the city of seattle, the arresting
Seattle Police Officers and King County for selective
and malicious prosecution. 263. Defendant Danko
argued with Mr. Lewis that there was no need for
him to retestify at his 3.6 hearing because it
would damage his chances of success obtaining his
arguing to have the evidence suppressed because the
officers did not have probable cause to stop him under
the facts of their report that they observed Mr. Lewis
merely holding out his hand without having seen any
exchanges take place between Mr. Lewis and the
supposed two known drug users. 264. Mr. Lewis explained
to Mr. Danko that that false assertion "never
happened" and it was a conspired lie by the arresting
officers and Mr. Lewis wanted to set the record straight
for his appeal if he was reconvicted for the
Court of Appeals to know his case involved a fabricated
conspiracy to cover up racial profiling and selective and
malicious prosecution by clear and convincing evidence

of Ex conspiracy to commit fraud and perjury between employees of the city of seattle and King county. 265. Defendant Danko conspired to prevent Mr. Lewis from retestifying murder to deprive Mr. Lewis from Es-establishing the Court record to include any reference of Lonnie Lee McClure as a material witness who was arrested and released by the arresting officers while under an active D.O.C. supervision warrant for his arrest, in exchange for Mr McClure's silence and by their threat not testify on behalf as a material witness against their police report charging Mr. Lewis with drug possession. 266. Defendant Danko further conspired with King County and the city of seattle and the arresting officers and former attorney's of record having represented Mr. Lewis, to prevent Mr. Lewis from re-testifying to deprive him from making a record of the fact he had told his attorney's to obtain the Seattle Police West Precinct log sheet and to obtain the video footage from the (SPD) police van as evidence to show that the arresting officer's had conspired their police report's to exclude his cousin in order to obtain their private advantage to cause irreparable harm to convict them in order to cover up their violating his clearly-established constitutional rights. 267. Defendant Danko conspired to prevent Mr. Lewis from further establishing any future record of ineffective assistance of counsel against his former attorney's and against claims of prosecutorial misconduct by selective and malicious prosecution

51

against King county Prosecuting Attorney Gabrielle
B. Dickerman in her private capacity for violating
Mr. Lewis Due process to double jeopardy under
the Fifth Amendment after having knowledge provided
by officer Lee that Lonnie Lee McClure had been
arrested at the scene and the officers failed to
make a full and fair disclosure of all material
facts to them at the time of arresting Mr. Lewis
in their police reports known to the prosecuting
attorney prior to the first trial which was obtained
by fraud and perjury and prior to the 14 days
the prosecutor sought to re-evaluate the facts
known to her surrounding Mr. Lewis's and Lonnie
Lee McClure's arrest inorder to have known that
the officers credibility as witnesses were more
likely to be false by evidence of fraud and perjury
testimony having developed on record to have in
her acting official capacity sought to dismiss
all charges against Mr. Lewis based on police officers'
misconduct of arbitrary action depriving Mr. Lewis of
his right to receive a owed duty by King county being
he was codefendant accused of a crime and was thus a
particular classed or group of person's individually etalawfully
charged against having violated a Revised Code of Washington

      268 Defendant (Dickeran) knowing that the arresting
officers in this case had intentionally committed fraud and
perjury and had conspired to release a material witness
Lonnie Lee McClure from the West Precinct in light of an

active arrest warrant and that the officers had purposely failed to document to the King County Prosecutors Office Meclure's unlawful arrest and release and their use of force against Lewis was not made in good faith of all the material known facts to them procured the arresting officers to re-submitt their testimony's during Mr. Lewis re-trial on October 3, 2006 for the purpose of obtaining another unlawful conviction by misuse of the legal system for which it was not designed for.

269. The trial court upon hearing testimony's by the arresting officers, Ms. Dickerman and Mr. Danko suppressed the seized evidence in light of the lack of reasonable suspicion and probable cause to initiated a lawful Terry Stop against Mr. Lewis based on the arresting officers contention that Mr. Lewis needed to be investigation because he was supposedly holding out his hand to persons in a group without having seen any items of cocain in his open hand or witnessed seeing any exchanges of money or drugs take place between Mr. Lewis and the known drug users in their initial observation's.

270. The Court further dismissed this case with prejudice. 271. On October 31, 2006, the Seattle Police Department Office of Professional Accountability in response to Mr. Lewis complaint against the arresting officers.

272. Prepared a proposed disposition after having supposedly, carefully reviewed the facts of this case and Captain Neil Low investigation concluded: The West Precinct

Log sheet showed that both Anthony Lewis and Lonnie
McClure were logged into holding cells for the crime of VUCSA
by officer Lee at 0312 hours.  Lonnie McClure was I and
R'd by an unidentified officer.  Captain Neil Low concluded
officer Lee claims to have no memory of the arrest of
Lonnie McClure even though It is his own handwriting
that logged both Anthony Lewis and Lonnie McClure.

273. Captain Neil Low in light of the evidence
Mr. Lewis presented in his compliant that all three officers
had arrested him and his cous Lonnie McClure and testified
falsely during trial that Lonnie McClure was not arrested and
further failed to document McClures arrest and that the officers had
lied that he had been engaged in a   drug transaction and that
the officers had infact discovered drugs as a result of
having unlawfully used excessive force against plaintiff
because he had informed the officers they did not have probable
cause to stop him and Lonnie McClure in spite of racial profiling
and without probable cause Simply order them both for no
reason to remove their hands from their pockets for an
unwarranted show of authority.  274. Captain Neil Low
concluded " Although likely Mr. Lewis was engage in drug
activity entitling the officers to make a lawful Terry
Stop and Frisk, the factual errors in their documentation
prevent me from making that conclusion." I recommend
a finding of " NOT SUSTAINED for the initial stop."

275. Captain Neil Low recommended that only
officers Tietjen and Lee receive supervisory intervention
for their failure to document the arrest and release of

54

Lonnie McClure. 276. While rendering deliberate indifference
to recommend the same supervisory intervention against officer
Kerry zieger for his failure to have documented Lonnie McClure's
arrest in his police report and having testified by fraud and
perjury during trial that Mr. Lewis was not arrested with another
person. 277. And failed to also have held Sgt. Mark Hazard accountable
for his failure to have documented in his supervisor summary report
also having screened the arrest of both Anthony Lewis and
Lonnie McClure at the West Precinct and had initialed his "MH"
initials on the West Precinct Log sheet concerning Lonnie McClure's
arrival and release. 278. Plaintiff notes this prima facie
evidence disclosed after plaintiff's trial by the Seattle Police Office
of Professional Accountability supports that the arresting officers
did in fact present a misleading Certification for Determination
of probable Cause to arrest Mr. Lewis for possession of cocain
before a King County Magistrate when officer Tietjens arrest
warrant while facially adequate to support probable cause, contained
misstatements of fact or omission which affected the issuing
magistrates determination to seized Mr. Lewis to appear to be
formally arraigned as a defendant against the officers conspiracy.
279. On January 2, 2007, defendant officer Micheal
Tietjen in the same "common scheme" received a one day
suspension his his again failure to document the arrest and
handcuffing of another man at the scene of the arresting
involving the George Troy Patterson case. 280 Inwhich
defendant officer Tietjen again in the obstruction of
justice conspired to to exclude in his police report that
he had detained and handcuff a second man at the scene

55

and that he had used excessive force and went
on to mislead investigators when he was under investigation
concerning the arrest. 281 Defendant Officer Tietjen's
own police report and investigation interviews statement
were contradicted by evidence of a store surveelance
camura having recorded the entire arrest and the
other mule detained and handcuffed at the scene as
prima fucie evidence against defendant officer Tietjens
Plan or scheme repeatedly to commit separate, but
very similar crimes of dishonesty's as a Seattle Police
officer.   282. Thus providing Mr. Lewis with a very
compelling propensity argument to support that after
having received supervisory intervention involving the
same similar conduct of Arrest and dishonesty procedures
in his and Lonnie Lee McClure's arrest ~~even Defendant Tietjen
in disregard to having received supervisory Intervention discipline again~~
re-violated the exact same Seattle Police Department Arrest and
honesty procedure's in the George Troy Patterson case causing
the Seattle Police Department to suspend defendant
Tietjen for one day.  283. On January 8, 2008, the City
of Seattle denied Mr. Lews' claims for damages claiming that
after review of the Seattle Police reports it appeared a
denial was appropriate. 284. The City of Seattle after
having reviewed the evidence that Mr. Lewis presented that the arresting
officers had violated the city's Seattle Police Departments arrest/honesty policies
involving Lonnie Lee McClures arrest and the officers trial testimony's were
of fraud and perjury and that the arresting officers Tietjen,
Lee, and Zieger conspired their trial testimony's with King County to procure
malicious prosecuting Mr. Lewis with false testimony during his retrial knowing

their testimony was false in order to misuse the legal system for a private, and ulterior purpose for which it was not designed for to unlawfully convict Lewis. 285. Did Owe plaintiff, an individual special duty to the public duty doctrine to pay Lewis any just compensation for having suffered a personal injury against being maliciously prosecuted by the City's Seattle Police Department's arresting officers having unlawfully initiated, and then continued in conspiracy with King County to continue conspiring to re-prosecute Mr. Lewis, in light of evidence of fraud and perjury upon Mr. Lewis having been unduly convicted on December 5, 2005, causing his conviction to be set aside on 42806 based on fraud, perjury and other corrupt means only to be dismissed on October 3, 2006 with prejudice in plaintiff's favor.

286. The City conspired with King County on a meeting of minds to deprive Lewis just compensation because it would show evidence of responsibility that would also further hold King County liable to the public duty doctrine and a special duty owed to pay Mr. Lewis any just compensation because King County continued to prosecute on behalf of the arresting officers false fraud and perjured Probable Cause report.

287. On February 28, 2008, Mr. Lewis filed a claim for damages with King County Executive Services Risk Management under claim # 42957, requesting to receive any just compensation against having been maliciously prosecuted and denied due process of evidence during trial as a criminal defendant.

288. King County Risk Management transferred Mr. Lewis claim over to King County Prosecuting Attorney's office who conspired with the City of Seattle after reviewing Mr. Lewis complaint involving King County's involvement with the City of Seattle's arresting officers and after having knowledge that the City's arresting officers had committed the crime of fraud perjury and tampering with a material witness Lonnie Lee M'Clure

57

and failed in good faith to have made known to the prosecuting Attorney's office all known facts of McClure's unlawful arrest and release and the use of force against Mr. Lewis in which unlawfully caused Mr. Lewis to be unduly convicted on December 5, 2005.    289. King county thereafter Mr. Lewis conviction was set aside based on ~~the~~ Crimes of fraud perjory and having tampered with a witness and in light of this crime having been committed by the arresting officers.

290. King county did refile the same criminal charges against Mr. Lewis knowing that prior to Mr. Lewis first trial that the officers arrest and documentation of this case had serious credibility problems.

291. And that the primary arresting officer Micheal Tietjen had recewed a one day suspension for having failed to document the arrest and release of a second hand cuffed person involving the arrest of George Troy Patterson on January 2, 2007, in which was caught on survelance camera and caused the Federal Bureau of Investigation to conduct an internal investigation into whether or **not** George Troy Patterson's rights had been violated during the arrest.

292. King county on or about May and June of 2008, conspired with the City of Seattle's decision to deny to pay Mr. Lewis any just compensation regarding the ~~exculpatory~~ facts of this case history.

293. King county in a letter denied Mr. Lewis claim stating that there was no evidence of any wrong doing involving King county. 294. Defendants King county and city of Seattle both conspired to defer liability against

58

It's own entity thus leaving Mr. Lewis to look to either left or right of King County and the City of Seattle as who to blame. 295. When actuality both King County and the City of Seattle owed a duty of care to Mr. Lewis in a specialized relationship under the public duty doctrine toward municipal liability responsible for the actions of It's employee's acting under authority of It's government policy, practice and custom directly effecting Mr. Lewis as an individual defendant named to defend against a criminal charge under the clearly-established Constitutional rights to receive due process of equal protection as an African American citizen entitled to receive the same privileges and immunities on the same term as white citizens in the City of Seattle, for King County, Washington.

296. Defendant Society Counsel Representing Accused Persons (SCRAP) a private law firm, representing indigent defendants and employer of defendant Flortas was responsible for hiring, training, supervising and disciplining defendant Freitas and therefore acted in the same conspiracy to deprive Mr. Lewis of his rights to receive equal protection of privileges and immunities as an African American defendant entitled to the 6th and 14 Amendment to receive effective assistance of counsel in the same term as white citizens in the City of Seattle, for King County, Washington, as if it had personally caused the intentional and conspired harm against plaintiff.

297. Defendant Northwest Defenders Association acting as a private law firm, representing indigent defendants, and employer of both defendant attorney's George Sjursen and Kevin W. McConnell and was responsible for hiring, training, supervising and disciplining defendant Sjursen and McConnell and therefore acted in the same conspiracy to deprive Mr. Lewis

Of his rights to receive equal protection of privileges and immunities as an African American defendant entitled to the 6th and 14 Amendment to receive effective assistance of counsel in the same term as white citizens in the city of Seattle, for King County, Washington, as if it had personally caused the intentional and conspired harm against plaintiff.    298. The defendants' Gabrielle R. Dickerman Charlton, Veronica Freitas, Micheal Tietjen, James Lee, Mark Huzard, George Sjursen, Kevin McConnell, Douglas North, Kerry Zieger and Micheal Danko, conspired to interfer with clearly-established constitutional rights by depriving Mr. Lewis of this clearly-established rights as mentioned throughout this complaint set forth above under 42 U.S.C. § 1981, 1982, 1983, 1985(3) and 1986 and the conduct was Knowing, intentional, conspired and malicious in deliberate indifference to plaintiff as an African American citizen and therefore plaintiff is entitled to receive punitive damages.    299. The Conspiracy to interfere with civil rights, obstructing justice, abuse of process and malicious prosecution, by depriving persons of rights or privileges as aforementioned throughout this complaint did cause plaintiff Lewis to suffer emotional distress, an humiliation and physical pain.

    300. As a direct and proximate result of this conspired infliction of emotional distress, Mr. Lewis has incurred damages and will continue to incur substantial damages in an amount to be established at trial.

301. The conspiracy to interfere with clearly-established civil rights, obstructing justice, by King County City of Seattle, Society Counsel Representing Accused Persons and Northwest Defenders Association as employers of defendants Gabrielle R. Dickerman Charlton, Veronica Freitas, George Surjursen, Micheal Danko, Kevin W. McConnell Officers Micheal Tietjen, James Lee, Kerry zieger, Mark Hazad and Douglas North are responsible for the acts of their individual employees as if the actions or inactions were caused by King County, City of Seattle, society Counsel Representing Accused Persons and Northwest Defenders Association themselves, caused plaintiff Lewis to suffer emotional distress, and humiliation and physical pain. 302. As a direct and proximate result of this conspired infliction of emotional distress, Mr. Lewis has incurred damages and will continue to incure substantial damages in an amount to be established at trial.

WHEREFORE the plaintiff jointly and severally prays for judgment in the amount to be established at trial of $10 million dollars, including

a. Economic damages to plaintiff against the defendants jointly and severally;

b. Non-Economic damages to plaintiff against the defendants jointly and severally.

c. Reasonable attorney's fees and cost to the Plaintiff under 42 U.S.C. § 1983

61

d. Cost of this action to the plaintiff under RCW 4.84 and other applicable state and federal statutes and rules;

e. Punitive damages; and special damages

f. Such othe relief as this court may deem equitable

DATED this 19th day of July 2009.

Anthony E Lewis #986577
ANTHONY E. LEWIS #96
WASHINGTON STATE PENITENTIARY
1813 N. 13TH AVE
WAIIA WAIIA, WA, 99362

62